UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PHILLIP CZYZ, O.D.,

            Plaintiff,

-vs-                                                Case No. 2:04-cv-34-FtM-33SPC

DEPARTMENT OF HEALTH & HUMAN
SERVICES,

            Defendant.
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on the Plaintiff Phillip Czyz O.D.'s Memorandum in Opposition to Secretary's Decision and in Support of the Plaintiff's Motion for Summary Judgment (Doc. # 12) filed on October 8, 2004. On November 8, 2004, the Secretary filed his response (Doc. # 14) to the Plaintiff's Memorandum and the issue is now ripe for review.

**FACTS**

      This case involves an overpayment assessment under Medicare Part B of Title XVIII of the Social Security Act 42 U.S.C. § 1395 *et seq*. (The Act). (Tr. 9). The Plaintiff's payment and medical provider's history including a detailed report on each medical service beneficiary employed by the Carrier in its random sampling is set forth in the ALJ's decision. (Tr. 9-122). The services at issue in this case consist of assigned claims for evaluation and management services, opthalmological services such as visual field tests, ocular photography, visual response tests, and eye examinations. (Tr. 113).

*Procedural History*

The Plaintiff is an optometrist who practices in Port Charlotte, Florida. (Tr. 9). He was notified on January 22, 1998, that he had been selected by the Carrier in his area for a post-payment comprehensive medical review audit of services billed in 1997. (Tr. 9). The Carrier as a result of the audit on August 7, 1998, found that the Plaintiff had been overpaid in the amount of $41,830.32. The Plaintiff timely requested a hearing before the fair hearing officer on August 14, 1998. (Tr. 10). On April 28, 1999, the fair hearing officer conducted a hearing on the claims of the beneficiaries in the sample selected by the Carrier for review. (Tr. 10). The fair hearing officer issued her decision on October 26, 1999. (Tr. 297-372). On December 27, 1999, the Plaintiff requested a hearing in front of an Administrative Law Judge (ALJ). (Tr. 11). That hearing took place on June 13, 2002. (Tr. 128-212). The ALJ rendered his decision affirming in part and denying in part the fair hearing officers decision on December 23, 2002. (Tr. 6 - 124). On March 3, 2003, a timely request for Medicare Appeals Council review was received. (Tr. 5). The Medicare Appeals Council denied the request on November 18, 2003. (Tr. 1-4). As a result, the ALJ's decision became the final decision of the Secretary and pursuant to 42 U.S.C. § 1395ff(b)(1) and 42 U.S.C. § 405(g) the Plaintiff filed this action on January 21, 2005.

*ALJ's Decision*

In his decision the ALJ affirmed in part and reversed in part the Fair Hearing Officer's decision (Tr. 114). The ALJ held the Carrier successfully invoked the presumption that the use of statistical analysis was valid in this case due to the large volume of claims and beneficiaries involved. Thus, the ALJ found that the Carrier's method of estimating the amount of overpayment was also valid. (Tr. 113). The ALJ went on to hold that based on the evidence in the record, for the

time period of January 1997-December 1997, the Carrier did not meet its burden establishing that the Plaintiff should have billed opthalmic codes over every evaluation and management code at issue in the case. (Tr. 113). The ALJ also found that the Plaintiff established that some of the Carrier's and the fair hearing officer's decisions in specific beneficiary's cases were erroneous. (Tr. 114). However, the ALJ held that the Plaintiff did not meet his burden establishing that the Carrier's rationale for downcoding the visual field tests was erroneous. (Tr. 113). Further, the ALJ found that the Plaintiff knew or should have known the conditions of coverage and therefore, the Plaintiff was at fault for causing the overpayment. Consequently, the Plaintiff was held to be liable for the cost of the overpayment. (Tr. 114).

## STANDARD OF REVIEW

The typical "genuine issue of material fact" standard that circumvents a summary judgement does not apply in Medicare overpayment cases such as this. Tsoutsouris v. Shalala, 977 F.Supp. 899, 909 (N.D. Ind. 1997). The ALJ acting in place of the Secretary, is the trier of fact and it is the ALJ's duty to weigh the evidence, resolve material conflicts, make findings of fact, and accordingly yield a determination. Id. The Court then reviews the final decision of the Secretary pursuant to 42 U.S.C. § 1395ff(b), which incorporates the standard of review from 42 U.S.C. § 405 (g). American Academy of Dematology v. Department of Health and Human Services, 118 F.3d 1495, 1497 (11th Cir. 1997). The findings of the Secretary, if supported by substantial evidence shall be conclusive. 42 U.S.C. 405(g). Substantial evidence is more than a scintilla, and is relevant if a reasonable person would accept the evidence as support for the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, under § 405(g), the Secretary's final decision will be disturbed only if the factual

findings underlying the decision are not supported by substantial evidence or if the Secretary did not apply the correct legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

## DISCUSSION

The Plaintiff argues that either there was no basis for the assessment of an overpayment or, if there was, he was entitled to have the collection of that overpayment waived.  Specifically, the Plaintiff argues that (A) The statistical sample used by the Carrier was less than 5% of the total number of the Plaintiff's Medicare files audited by the Carrier and, therefore, violated the Plaintiff's Due Process Rights; (B) The expert opinion presented by the Carrier relied upon an arbitrary selection of only a portion (15) of the otherwise inadequate statistical sample of 30 as the basis for that expert's opinion and it was, therefore, erroneous as a matter of law to accept that expert opinion; (C) It was an error of law for the carrier to be allowed to present evidence from an expert who was licensed in a profession other than the Plaintiffs; (D) The finding that some of the tests that were disallowed were deemed not medically necessary was not supported by substantial evidence; (E) The ALJ's determination that the procedure and equipment used by the Plainitff for the purpose of carrying out the visual fields test was not substantially equivalent to the equipment deemed acceptable by the Carrier and, therefore, should not have been compensated at the same rate was not supported by the evidence;  (F) If there was overpayment, it should have been waived under the applicable standard; and (G) The ALJ should have made a factual determination regarding the disputed interest assessment imposed by the Carrier.[1]  Because of the similar nature of some of the Plaintiff's objections, the Court will consider them as one rather than as separate arguments

---

[1] On March 17, 2005, the parties filed a Stipulation (Doc. # 15) settling the disputed interest imposed on the overpayment and thus, summary judgement regarding that issue is now moot.

*(A) Whether Statistically Random Sample of Plaintiff's Claims and Use of Dr Nicoltiz to Review a Smaller Sample Violated the Plaintiff's Due Process Rights*

The Plaintiff argues from Daytona Beach General Hospital v. Weinberger, that since the statistical sample used by the Carrier to determine the amount of his overpayment was less than ten percent, it violated his due process rights. 435 F. Supp. 891, 900 (M.D. Fla. 1977). However, pursuant to the February 20, 1986, CMS published Ruling 86-1 titled "Use of Statistical Sampling to Project Overpayments to Medicare Providers and Suppliers," there is no "statistical floor" that auditors must exceed in order to guarantee providers due process as long as the audit methods used are valid and reliable. Webb v. Shalala, 49 F. Supp. 2d 1114, 1125 (W.D. Ark. 1999) *See* Ratanasen v. State of California Dept. Of Health, 11F.3d 1467, 1472 (9th Cir. 1993) (holding that a 3.4% sample was sufficient); Michigan Dept. of Education v. U.S. Department of Education, 875 F.2d 1196, 1206 6th Cir. 1989) (holding that 0.4% statistical sample was valid for determining improper expenditures). Furthermore, unlike the hospital in Daytona, the Plaintiff in this case had access to a hearing before a Fair Hearing Officer, the opportunity to appeal that decision before an ALJ, the Medicare Board of Appeals, and finally this Court. *See* Ratanasen, 11F.3d at 1472. Thus, the Plaintiff's claim that his due process rights were violated because a smaller than 10% beneficiary sample was used to determine the size and amount of the overpayment lacks merit.

The Court's review is not to determine if the ALJ's decision was right or wrong *per se*, but whether or not he properly applied the law and based his decision on substantial evidence. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). In determining that the statistical sampling in this case was valid, the ALJ applied the three part test from CMS ruling 86-1. Ruling 86-1 states that statistical sampling is valid when: (1) the claims submitted by a provider are voluminous; (2) the claims reflect a pattern of erroneous billing or over-utilization; and (3) a case by case review by the

carrier is not administratively feasible. (Tr. 21).  In this case, the ALJ determined that the relevant medical services were provided to more than 950 beneficiaries with 7,701 claims submitted for medicare payment. (Tr. 21).  The record showed that the Plaintiff had billed procedure code 99215 at 64.01% more frequency than similarly situated physicians. (Tr. 21).  And finally, the ALJ noted that an individual audit of over 7,700 medical services provided to 950 beneficiaries would clearly be impossible. (Tr. 21).  Thus, the ALJ determined that the sample statistical analysis in this case was valid and in conformity with CMS 86-1 guidelines.

The ALJ properly noted that the burden then shifted to the Plaintiff to refute the rebuttable presumption that the statistical sample was valid.  (Tr. 21).  The ALJ's opinion noted that the Plaintiff had two methods with which to attack the presumption the statistical analysis was valid. The first method of rebuttal concerns the issue of whether the process of selecting the sampled cases was performed properly, and the second method of rebuttal deals with whether the selected cases were properly adjudicated by the Carrier. (Tr. 22).  The Plaintiff did not object to the Carriers method of selecting samples, therefore, the ALJ moved on to consider whether or not the Plaintiff established that the selected cases were not properly adjudicated. (Tr. 22).

The Plaintiff argues that the Secretary's decision was arbitrary and capricious since he relied on the Carrier's expert Dr. Nicolitz, who only reviewed a sample of fifteen (15) beneficiaries. However, this argument lacks merit as there is no case law that states how large a percentage of the entire universe must be sampled before a sample is considered invalid. <u>Webb</u>, 49 F. Supp. 2d at 1125.  In his decision, the ALJ reviewed each individual beneficiary selected by the Carrier and Fair Hearing Officer as well as testimony from Ms. Donna Abera R.N. one of the Carrier's medical

review analyst. (Tr. 14). The ALJ then reviewed each provider service code and how it related to the instant action and applied those codes to each individual case. (Tr. 15-26). The ALJ stated that:

> The Carrier documentation indicates that this review was also certified by Gwen Hamiliton, R.N. and Sidney Seweel, M.D., the Carrier's Medical Director. I noted that in all but a few instances, the issue was not medical necessity *per se,* but the broader coding issues, *i.e.* whether the [Plaintiff] used the appropriate code to describe the services he performed. The Fair Hearing Officer also evaluated every beneficiary's medical records and concluded that medical necessity was not at issue in the majority of the cases. In the cases where medical necessity was at issue, Dr. Nicolitz gave his impression after reviewing the individual beneficiary's medical files. (Tr. 15).

Thus, Dr. Nicolitz review of the results from fifteen beneficiaries was only a part of the overall sample and not the sole information used by either the Carrier, the Fair Hearing Officer, or the ALJ in making a determination as to the overpayment using the statistical sample. Further it is apparent from the record that the Plaintiff has had ample opportunity to challenge the Carrier's finding through review from a Fair Hearing Officer, the ALJ, and the Medicare Appeals Board. Consequently, the use of Dr. Nicolitz to review a smaller sample was not a violation of the Plaintiff's right to due process.

### (B) Whether it was Error for the Secretary to Allow Expert Testimony From an Expert Who Was Licensed in a Profession Other Than That of the Plaintiff

In regards to the application of Dr. Nicolitz opinion to Dr. Czyz's practice, the ALJ held as follows:

> I do note that the [Plaintiff] has written that he practices closely with opthalmologists and, therefore, he does not fit under the typical optometrist description because he evaluates more "ocular pathology," presumably like an opthalmologist. At the hearing Dr. Czyz testified that he practices with an opthalmologist: "[w]e use the same equipment, we use the same forms, we use the same staff. "We do the same tests. . ." Under these circumstances, I do not find that consulting with an opthalmologist was an error that is sufficient to invalidate the overpayment assessment outright. (Tr. 15).

The Plaintiff argues that the ALJ erred in using Dr. Ernst Nicolitz, an Ophthalmologist, instead of an Optometrist as an expert witness. Indeed the Plaintiff presented a letter dated May 23, 2000, to the ALJ from Lydia Rogers, R.N., Director of Medical Policy and Review for the Carrier, stating that it was the Carrier's policy to engage physician consultants of the same speciality when reviewing the post payment process. (Tr. 15). However, the Plaintiff provided no legal basis that specifically stated the ALJ must consider only a physician consultant from the same field when reviewing post payment controversies. As the Defendant noted, the ALJ acting pursuant to the Secretary, is the trier of fact and it is the ALJ's duty to weigh the evidence, resolve material conflicts, make findings of fact, and accordingly yield a determination in the case. Tsoutsouris, 977 F.Supp. at 909 (citing Richardson v. Perales, 402 U.S. 389, 400, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)).

In his decision, the ALJ noted that Rogers' letter defined the Carrier's policy as of May of 2000 but no evidence was presented that established the Carrier's policy as it existed in 1997 when the audit was performed. (Tr. 20). In evaluating the codes used by the Plaintiff, the ALJ reviewed the American Medical Association's Physicians Current Procedural Terminology (CPT) Manual, 1997 edition. (Tr. 16). The ALJ also relied on the CPT manual's Appendix D, Clinical Examples Supplement for established patient codes as well as the opinion of Dr. Nicolitz that the Plaintiff should have used an optometrists code in submitting his claims.

In contrast, the ALJ also acknowledged that the Carrier would allow and had a policy in place that allowed an optometrist to use the higher opthalmological evaluation and management (E/M) codes, used in this instance by the Plaintiff, as well as the lower codes preferred by the Carrier. (Tr. 20).

After listening to both sides, the ALJ determined that the more instructive information for determining the proper code for a particular service was found in the CMS's Medicare Carriers Manual (MCM), CMS-Pub. 14-3, Section 4630, which instituted the "Correct Coding Initiative" for services provided after January 1, 1996, and MCM § 15501. (Tr. 20). The MCM states:

> [m]edical service is the overarching criterion for payment in addition to the individual requirements of a CPT code. It would not be medically necessary or appropriate to bill a higher level of evaluation and management service when a lower level of service is warranted . . . Documentation should support the level of service reported. (Tr. 21).

The MCM embodies the agency's interpretation of its statutes and regulations the court must defer to an agency's interpretation of its statutes. Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

Thus, the ALJ's decision was not based solely upon the opinion of Dr. Nicolitz, but upon a wide range of material presented at the hearing, and in particular, his interpretation of the MCM as it applied to each beneficiary in the sample. Where the ALJ supports his decision with substantial evidence the Court will not overturn that decision. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

### (C) Whether the Secretary's Disallowance of Claims That Were Deemed to be Not Medically Necessary and to "Downcode" Visual Field Testing Services Provided by Plaintiff was Supported by Substantial Evidence

The Plaintiff asserts that the ALJ's decision regarding the medical necessity and downcoding of visual field testing services was not supported by substantial evidence. The ALJ did not perform a credibility analysis on Dr. Czyz's testimony and because the ALJ only heard testimony on seven (7) of the beneficiaries rather than all thirty (30). However, in making his determination, the ALJ had the record from the Fair Hearing Officer in which Dr. Czyz presented testimony on all thirty (30)

beneficiaries. In addition, the ALJ had the medical records of all fifty-six (56) beneficiaries used in the Carriers statistical sample. In fact, a review of the ALJ's decision shows that the ALJ made a detailed record of each individual beneficiary and provided detailed comments as to why he allowed some medical treatments and downcoded some of the Visual Evoked Response Tests (VER) performed by the Plaintiff.

In her decision, the Fair Hearing Officer either denied or downcoded the VER claims filed by the Plaintiff. (Tr. 24). The Fair Hearing Officer denied these claims because of a lack of documentation on the part of the Plaintiff and in most instances the ALJ agreed with the Fair Hearing Officers determination. (Tr. 24). The ALJ's decision to give more weight to the Fair Hearing Officer is appropriate. Tsoutsouris, 977 F.Supp. at 905.

The ALJ noted that in conducting the majority of the VER examinations, the Plaintiff used the Synemed "Field Master Advantage" (Synemed) device rather than the alternative Octopus Program 32 (Octopus) or comparable Humphries 30-2 device. (Tr. 23). The ALJ stated that, "[t]he Fair Hearing Officer upheld the Carriers down coding of the visual field testing using the Synemed equipment, because it is not an extended examination or a 'full threshold program' automated perimetry justifying the higher code." (Tr. 28). The ALJ made this determination to downcode some of the Plaintiff's VER's, because the Synemed takes only three (3) to four (4) minutes to test each eye while the Octopus device takes an average of twenty (20) minutes per eye. (Tr. 23). Further, where the record showed that the Plaintiff used the Octopus instead of the Synemed to perform VER examinations the ALJ upheld the use of the higher code. (Tr. 35).

To support his decision down coding the VER's the ALJ relied on the Fair Hearing Officer's determinations based upon the medical textbook resource entitled Visual Fields, by Neil Choplin,

M.D. and Russell Edwards M.D., the relevant section was included in the record, the opinion of Dr. Nicolitz, and the Coverage Issues Manual (CIM), § 49-50, published by CMS and the testimony presented at the hearing. (Tr. 22). While the Plaintiff objected to Dr. Nicolitz opinion in this matter, because his speciality differs from the Plaintiffs, Dr. Nicolitz is an opthalmologist and therefore, highly qualified to testify as to the nature of the equipment used by the Plaintiff.

Regarding the Plaintiff's arguments that the ALJ erred by not assessing the credibility of Dr. Czyz testimony regarding the medical necessity of some of the claimed services lacks merit. The Plaintiff argues that the ALJ's decision was arbitrary and capricious because there was no evidence presented to rebut the testimony of Dr. Czyz. "A decision is arbitrary and capricious if the agency has relied on factors which the Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Assn. v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856. 77 L. Ed. 2d 443 (1983).

Contrary to the Plaintiff's argument the ALJ had the complete medical record before him as well as the decision of the Fair Hearing Officer. In his review of medical necessity of the services claimed, the ALJ found for the Plaintiff and against the Fair Hearing Officer in most instances. (Tr. 32-108). Furthermore, the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible. Tsoutsouris, 977 F.Supp. at 905-906 (citing Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir. 1989). In reviewing the procedures and/or service codes denied by the ALJ, the Court found the ALJ provided substantial evidence in making his determinations.

Regarding several determinations, the Plaintiff himself testified that he either did not perform the procedure claimed or that he filed the wrong code for the procedure he did perform. (Tr. 42, 49). In reviewing several other denials, the ALJ found that the Plaintiff either did not contest the denial or that there was no documentation provided that even established the procedure was performed. (Tr. 54, 58, 63, 65, 101-102, 112). The Plaintiff must provide some documentation that the medical service was provided. Maximum Comfort, Inc. v. Thompson, 323 F. Supp. 2d 1060 (E.D. Cal. 2004); Tsoutsouris, 977 F.Supp. at 905 (denying payment for services because the physicians hand writing regarding the treatment was illigible and therefore, the claim lacked proper documentation). Concerning the denial of Patient P. White, the Plaintiff's records show that the service provided was for refraction analysis to determine if the Patient needed glasses. Pursuant to 42 C.F.R. § 411,15(c) refraction examinations for eyeglasses are not covered, thus the ALJ properly applied the law and denied the service. (Tr. 70-71). Several other medical services were denied by the ALJ, but the ALJ always provided substantial evidence that the service was not necessary because the same service was performed only a matter of weeks before or because the rules provided that the Carrier did not support payment. (Tr. 52, 70-71).

Where the ALJ's denials are supported by substantial evidence, the Court will not question the ALJ's credibility determinations nor review the weight accorded to testimony or the medical reports because such a determination is not within the scope of the Court's review. U.S. Steel Mining Co., LLC. v. Director, OWCP, 386 F.3d 977, 992 (11th Cir. 2004). *See* Jordan v. Benefits Review Bd. Of the U.S. Dept. of Labor, 876 F.2d 1455, 1460 (11th Cir. 1989) (holding the question of whether the medical report is sufficiently documented and reasoned is one of credibility for the finder of fact); Taylor v. Ala, By-Products Corp., 862 F.2d 1529, 1531 n. 1 (11th Cir. 1989) (holding

the Court cannot question the weight accorded to the evidence by the ALJ for such is not within the Court's scope of review).

### (D) Should the Secretary's Decision Not to Waive the Overpayment be Upheld or Should the Overpayment Have Been Waived

"Medicare's overpayment will be waived if (1) the provider was without fault in accepting the incorrectly made payment and (2) the adjustment or recovery of the overpayment would defeat the purpose of the Title II or Title XVIII of the Act, or the adjustment or recovery of the overpayment would be against equity and good conscience." Tsoutsouris, 977 F.Supp. at 906. The Plaintiff contends that he is entitled to waiver of the overpayment because the medical services in question were provided in good faith.

The ALJ found that Dr. Czyz knew or should have known that the provided services were not covered under Medicare Plan B. The ALJ quoted from the Code of Federal Regulations as follows:

> (e) knowledge based on experience, actual notice, or constructive notice. It is clear that the provider, practitioner, or supplier could have been expected to have known that the services were excluded from coverage on the basis of the following:
> (1) Its receipt of the HCFA notices, including manual issuances, bulletins, or other writings guides or directives from intermediaries, Carriers, or PROs, including notification of PRO screening criteria specific to the condition of the beneficiary for whom the furnished services are at issue and of medical procedures subject to pre-admission review by a PRO.
> (2) FEDERAL REGISTER publications containing notices of national coverage decisions or of other specifications regarding non-coverage of an item or service.
> (3) Its knowledge if what are considered acceptable standards of practice by the local medical community.

42 C.F.R. § 411.406(e).

The ALJ pursuant to 42 C.F.R. § 411.406(e), held that as a participant in the Medicare program for over thirty (30) years with knowledge and expertise as a provider of laboratory services, the Plaintiff had a duty to familiarize himself with the legal requirements, HCFA notices, issuances and bulletins, regarding the cost reimbursement. (Tr. 109). Therefore based on the requirements of the regulations, the ALJ found the Plaintiff at fault for the overpayment. Where the ALJ is making interpretations of the agencies statutes and regulations the court must defer to an agency's interpretation. Chevron, 467 U.S. 837. Consequently, the Court will not disturb the ALJ's decision regarding the wavier of overpayment.

Accordingly, it is now

**RECOMMENDED:**

The Plaintiff Phillip Czyz O.D.'s Memorandum in Opposition to Secretary's Decision and in Support of the Plaintiff's Motion for Summary Judgment (Doc. # 12) should be **DENIED**. The decision of the ALJ should be affirmed.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended at Fort Myers, Florida, this __28th__ day of March, 2005.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:
Counsel of Record
DCCD